# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                              )
**FIBERLIGHT, LLC,**                          )
                                              )
      **Plaintiff/Counter-Defendant,**   )
                                              )
      **v.**                               )     **Civil Action No. 16-2248 (ESH)**
                                              )
**WASHINGTON METROPOLITAN**                   )
**AREA TRANSIT AUTHORITY,**                   )
                                              )
      **Defendant/Counter-Plaintiff.**    )
_____   )


## MEMORANDUM OPINION

In 2006, FiberLight, LLC, and the Washington Metropolitan Area Transit Authority ("WMATA") entered into a contract pursuant to which, *inter alia*, FiberLight agreed to pay WMATA on an annual basis for the right to install and operate its fiber optic cable and associated equipment inside WMATA's Metrorail System (the "License Agreement"). FiberLight now believes that WMATA leased rights that it did not possess and has sued for breach of contract, declaratory judgment and breach of the implied covenant of good faith and fair dealing (*see* First Am. Compl., ECF No. 13 ("Am. Compl."); WMATA has filed counterclaims for breach of contract and unjust enrichment (*see* WMATA's Amended Answer to the First Am. Compl. & Amended Counterclaims, ECF No. 15 ("Am. Ans. & Counterclaims"). Before the Court is WMATA's motion to dismiss FiberLight's first amended complaint. (*See* WMATA's Mot. to Dismiss, ECF No. 16. ("Mot.").)  For the reasons stated herein, the motion will be denied.

# BACKGROUND

## I.    FACTUAL BACKGROUND[1]

FiberLight is a company that "constructs, owns, and operates fiber optic facilities for sale or lease to government and commercial carrier customers in the Washington, D.C. metropolitan area." (Am. Compl. ¶ 1.)  On September 16, 2005, the Public Service Commission of the District of Columbia granted FiberLight's application "to provide resold and facilities-based local exchange telecommunication services in the District of Columbia."[2]  *See* Order No. 13761, Application of FiberLight, LLC to Provide Local Telecommunications Services in the District of Columbia, Formal Case No. TA 05-9 (Sept. 16, 2005); (*see also* Am. Compl. ¶ 2).  Under District of Columbia law, "'[a]ny telecommunications provider in the District shall have the right to utilize the public right-of-ways of the District for installation, maintenance, repair, replacement, and operation of its telecommunications system . . . .'"  (Am. Compl. ¶ 5 (quoting D.C. Code § 34-2004(a)).

WMATA is a regional transportation authority and the operator of a "public mass transit rail system in the Washington, D.C. metropolitan area" (the "WMATA System").  (*See* Am. Compl. ¶ 9 & Ex. 1 ("License Agreement"), at 1.)  It is "the product of an interstate compact entered into by Maryland, Virginia and the District of Columbia" (the "WMATA Compact").  *KiSKA Const. Corp. v. Washington Metro. Area Transit Auth.*, 321 F.3d 1151, 1158 (D.C. Cir. 2003).

---

[1] As the Court is ruling on a motion to dismiss, the facts set forth herein are taken from the allegations of the amended complaint and the exhibits thereto.

[2] FiberLight is also authorized to operate in Maryland and Virginia (*see* Am. Compl. ¶¶ 3-4), but this case concerns only its operations in the District of Columbia.

On or about October 23, 2006, FiberLight and WMATA entered into the "License Agreement" that underlies this lawsuit. (Am. Compl. ¶ 10.) In relevant part, the License Agreement provides that WMATA, in exchange for an annual license fee, will allow FiberLight to install and operate telecommunications facilities within the WMATA System's "surface transportation corridors and undergrounds tunnels" (the "WMATA ROW" or "WMATA Right-of-Way"). (License Agreement, at 1, art. 10, & Schedule 1 thereto; *see also* Am. Compl. ¶¶ 10, 21, 24, 26.) The License Agreement includes an affirmative representation by WMATA that "it has the power and authority . . . to lease conduit rights in the WMATA ROW to FIBERLIGHT for the operation and maintenance of the FiberLight System . . . ." (License Agreement, art. 14.1.)

Until 2014, FiberLight accepted the Article 14.1 representation as true, assuming that WMATA "would not attempt to license real or personal property rights that it did not possess." (Am. Compl. ¶ 28.) At some point during 2014, though, FiberLight "observed that much of the WMATA network lay directly beneath the public rights-of-way, an area that FiberLight already had the right to occupy as a certificated public utility." (Am. Compl. ¶ 27.) "The realization that the WMATA network lay directly beneath the public rights-of-way led FiberLight to inquire whether WMATA had some form of independent ownership of such real property beneath the public rights-of-way." (Am. Compl. ¶ 28.) This realization led FiberLight to raise the issue with WMATA, in a letter dated August 22, 2014. (Am. Compl. ¶ 22.) In that letter, after stating that it was "currently expanding [its] fiber network in the DC area and seek[ing] to clearly understand the nature of the license contemplated under the [License] Agreement," FiberLight asked WMATA to respond to "several questions regarding the [License] Agreement":

1. Regarding Section 14.1 of the Agreement in which WMATA represents it has the power and authority to 'own and operate the WMATA System, **and to lease**

**conduit right in the WMATA ROW [right-of-way] to FIBERLIGHT** for the operation and maintenance of the FIBERLIGHT System . . .', will you please inform us of the source and nature of that authority?"

2. What is the nature of the WMATA ROW? From whom is it granted and is it exclusive in nature?

3. Where the WMATA ROW intersects or runs parallel to the public ROW, which ROW holder has precedence?

4. Will WMATA provide us a copy of the DC Mayor's permit for sections of the WMATA ROW that lie[] within the public ROW which we believe is required under D.C. Code Ann. § 10-1141.03.? If WMATA believes that it is not subject to this Code section, please provide an explanation?

5. Does the license contemplated in the Agreement cover use of real property (i.e. use of WMATA's ROW) or personal property?

(Am. Compl., Ex. 2, at 1-2 (quoting License Agreement, art. 14.1) (emphasis in original).)

WMATA response came in a letter dated January 22, 2015. (Am. Compl., Ex. 3.) It identified the WMATA Compact as the source of its authority to own and operate the WMATA System, and the November 20, 1969 "Master Agreement with the District of Columbia" as the source of "the terms and conditions associated with the construction of the Metrorail System on D.C. government property." (Am. Compl., Ex. 3, at 1-3.) WMATA's letter attached a copy of the 1967 WMATA Compact, but not the 1969 Master Agreement. (*See* Am. Compl., Ex. 3, at 3.) The letter described "WMATA's Right of Way" as "private property used for a public purpose," adding that "[a]ny particular parcel of WMATA property may be held as fee simple property, permanent or temporary easement, or as some less-than-fee estate." (Am. Compl., Ex. 3, at 1-2.) However, WMATA "never produced or identified any such land record, deed or title." (Am. Compl. ¶ 35.)

FiberLight found WMATA's response to be unsatisfactory (*see* Am. Compl. ¶ 30 ("WMATA could not provide a straightforward answer") and ultimately "concluded that that

representation by WMATA in Article 14.1 . . . 'was untrue in a material respect.'" (Am. Compl. ¶¶ 30, 38-39 (quoting License Agreement, art. 21.1).) Presumably based on this conclusion, FiberLight did not pay WMATA's 2014 or 2015 annual invoices.

On August 24, 2016, WMATA sent FiberLight a letter as a "notice of failure of Licensee to make payment" and stating that it "expect[ed] payment of the outstanding amount of $789,213.90 plus interest in full, and within 15 business days." (Am. Compl., Ex. 4, at 1.) WMATA further advised FiberLight that "if payment is not received within this time period, [FiberLight] will be in default of [its] obligations in accordance with Article 20 [of the License Agreement]" and, if that happened, WMATA "may exercise one or more of the [r]emedies provided pursuant to Article 21 [of the License Agreement], which include, but are not limited to, termination of the License."[3] (Am. Compl., Ex. 4, at 1-2.).

Article 21.1 of the License Agreement provides that:

> *Upon the occurrence and during the continuance of any event of default*, the non-defaulting party may, at its option, declare this License Agreement to be in default and may, in addition to any other remedies provided herein, terminate this License Agreement. No remedy is intended to be exclusive, but each shall be cumulative and in addition to and may be exercised concurrently with any other remedy available to WMATA or FIBERLIGHT at law or in equity.

(License Agreement, art. 21.1 (emphasis added).) However, it also provides that:

> In addition to all other remedies contained herein, WMATA and FIBERLIGHT agree that *if any representation made in this License Agreement is untrue in any material respect when made and the non-defaulting party elects not to terminate this License Agreement, the parties shall negotiate in good faith an equitable adjustment to the payment terms* with the intention of reasonably compensating the other party for any damages it may have sustained as a result of such representation being untrue when made.

---

[3] Article 20 of the License Agreement provides that "an event of default" includes "the failure of either party to perform or observe any material covenant to be performed or observed by it pursuant to the License Agreement." (License Agreement, art. 20.1(c).)

(License Agreement, art. 21.1 (emphasis added).) In addition, Article 27.4 of the License Agreement provides that "the parties *shall negotiate in good faith to resolve [any] claim or dispute* or, upon the failure to resolve such claim or dispute through good faith negotiations, the parties may attempt to resolve such claim or dispute through alternative dispute resolution (ADR) techniques." (License Agreement, art. 27.4 (emphasis added).)

FiberLight did not make the payments WMATA demanded, but on August 30, 2016, it "requested good faith negotiations with WMATA." (Am. Compl. ¶ 63.) On September 14, 2016, FiberLight and WMATA met. (Am. Compl. ¶ 64.) At that meeting, FiberLight "again requested good faith negotiations," while WMATA "advised it would provide FiberLight written evidence to substantiate its Article 14.1 representations." (Am. Compl. ¶ 64.)

WMATA "never provide[d] the written response it committed to provide and never provided any evidence that substantiate[d] its Article 14.1 representations." (Am. Compl. § 65.) "Instead, on October 14, 2016, WMATA warned FiberLight that within fifteen (15) days, it would advise FiberLight of WMATA's election to accept ownership of the FiberLight System, or have it removed." (Am. Compl. ¶ 66.)

On October 25, 2016, "pursuant to Article 27.4 of the License Agreement, . . . FiberLight recommended to WMATA that the parties engage in mediation as a form of voluntary dispute resolution to resolve this dispute," but it also "advised WMATA that, pursuant to Article 27.5 of the License Agreement, it was providing notice that it could invoke its right to litigation to resolve this dispute."[4] (Am. Compl. ¶¶ 66-67.)

---

[4] Article 27.5 states: "If any claim or dispute arising hereunder is not resolved in accordance with the provisions of this Article, either party may, upon giving the other party at least ten (10) calendar days prior written notice, initiate litigation to submit such claim or dispute for decision in the United States District Court for the District of Columbia . . . ." (License Agreement, art. 27.5.)

By letter dated November 2, 2016, WMATA declined the offer to engage in mediation. (*See* Am. Compl., Ex. 5.)  WMATA's letter stated that it "ha[d] engaged in good faith negotiations with FiberLight for nearly two years," but that the "parties' positions remain unchanged" and "[p]rolonged negotiations, or even mediation, serve only to allow FiberLight to continue to engage in contractually prohibited self-help."  (Am. Compl., Ex. 5.)  WMATA's letter also stated that "(i) the [License] Agreement was terminated; and (ii) unless FiberLight immediately pays the amounts past due, including applicable interest, in full, WMATA intends to initiate litigation within ten (10) days from the date of this letter to enforce its right to payment under the [License] Agreement."  Finally, WMATA's letter asked FiberLight to provide WMATA with FiberLight's "proposed plan for orderly termination pursuant to Article 23 of the [License] Agreement."[5]  (Am. Compl., Ex. 5, at 1-2.)

On December 6, 2016, FiberLight sent WMATA a letter asking it to "confirm that FiberLight will continue to have unimpeded access to the . . . WMATA System" for the purpose of installing new fiber.  (*See* Am. Compl., Ex. 6, at 1.)  WMATA responded, in a letter dated December 16, 2016, that FiberLight's request was "surprising" given that WMATA had "terminated" the License Agreement and that, as a result and by operation of Article 2.4 of the License Agreement, the FiberLight System had become WMATA's property.  (Am. Compl., Ex. 6, at 1 (quoting License Agreement, art. 2.4 ("[U]pon termination of this License Agreement . . . the FiberLight System shall, at the sole and unfettered discretion of WMATA, . . . become the property of WMATA.").)

---

[5] Article 23.1 states: "Upon expiration or earlier termination of this License Agreement, WMATA and FIBERLIGHT agree to cooperate with each other in good faith to achieve an orderly termination."  (License Agreement, art. 23.1.)

## II.   PROCEDURAL HISTORY

On November 11, 2016, before the last exchange of letters, FiberLight initiated litigation. (*See* Compl., ECF No. 1.)  It filed an amended complaint on December 28, 2016, which includes three counts.  Count I is a claim for breach of contract, which claims that: (1) "WMATA is in material breach of the License Agreement because it has made a materially untrue representation under Article 14.1 that it has the right 'to lease conduit rights in the WMATA ROW to FIBERLIGHT for the operation and maintenance of the FiberLight System . . .' and refused to provide any evidence supporting its power and authority to lease FiberLight rights in the WMATA ROW" (Am. Compl. ¶ 82 (quoting License Agreement, art. 14.1)); and (2) "WMATA breached Articles 21.1 and 27.4 of the License Agreement when it failed to negotiate in good faith an equitable adjustment to the payment terms of the License Agreement after it was advised of its materially untrue statement."  (Am. Compl. ¶ 83.)  Count II seeks a declaratory judgment that:

> (1) WMATA is in breach of the License Agreement and FiberLight is not; (2) WMATA cannot charge FiberLight an annual license fee under the License Agreement for placing the FiberLight System in the public rights-of-way; (3) WMATA must continue to provide FiberLight access to the FiberLight System as required pursuant to, *inter alia*, Article 11 of the License Agreement; (4) FiberLight has independent authority to place, operate and expand its network in the public rights-of-way; (5) WMATA's purported termination of the License Agreement was invalid; and, (6) WMATA has not taken and cannot take ownership and possession of the FiberLight System, interrupt live traffic on the FiberLight Network, or remove it from the WMATA System.

(Am. Comp. ¶ 92.)  Count III claims that WMATA breached the "implied covenant of good faith and fair dealing" when it

> a.   Committed, in a meeting on September 14, 2016, to provide a detailed explanation of its legal authority and property rights but failed to do so;
>
> b.   Did not follow the detailed dispute resolution provisions, including but not limited to the preference for mediation or other alternative dispute resolution, of Article 27 in the License Agreement;

c.  Requested, pursuant to Article 2.4 of the License Agreement, that FiberLight provide a plan to remove its fiber.  Under Article 2.4, FiberLight would have six months to remove its fiber.  FiberLight responded that "it will need additional time to resolve this dispute and, if necessary, provide for orderly termination."  WMATA, claiming that FiberLight had not responded when it in fact did, then refused to continue negotiating in good faith as required by Article 23 of the License Agreement and claimed a right to ownership of FiberLight's fiber, despite the fact that WMATA has no such right under the contract and, upon information and belief, has no federal, state or local authority to operate the FiberLight network[; and]

d.  Refused to propose or even discuss any other rate for the License Agreement as required by Article 21, aside from that originally stated that at the time would have been based on WMATA's assertion of clear title to the underlying property rights, an assertion which it cannot now support.

(Am. Compl. ¶ 97.)

On January 13, 2017, WMATA filed (1) its answer to the amended complaint, denying any misrepresentation; (2) counterclaims for breach of contract and unjust enrichment;[6] and (3) the instant motion to dismiss.  FiberLight filed its opposition on February 3, 2017 (*see* FiberLight's Opp'n to Mot. to Dismiss, ECF No. 18 ("Opp'n")), and WMATA filed its reply on February 17, 2017 (*see* WMATA's Reply in Support of Mot. to Dismiss, ECF No. 19 ("Reply")).

### DISCUSSION

WMATA has moved to dismiss FiberLight's amended complaint for lack of jurisdiction, *see* Fed. R. Civ. P. 12(b)(1), failure to state a claim upon which relief can be granted, *see* Fed. R. Civ. P. 12(b)(6), and failure to satisfy the heightened pleading requirements for a fraud claim, *see* Fed. R. Civ. P. 9(b).

---

[6] WMATA's counterclaims are based upon FiberLight's failure to pay WMATA's annual invoices from 2014 to the present, failure to provide WMATA with an orderly termination plan, and continued use of the fiber optic network without paying compensation.  (*See* Ans. & Counterclaims at 18-20.)

# I.    SUBJECT MATTER JURISDICTION

WMATA argues that FiberLight's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction because they are precluded by the doctrine of sovereign immunity.  To survive a motion to dismiss pursuant to Rule 12(b)(1), plaintiff bears the burden of establishing that the court has subject matter jurisdiction over its claim.  *See Moms Against Mercury v. Food & Drug Admin.*, 483 F.3d 824, 828 (D.C. Cir. 2007).  In determining whether there is jurisdiction, "the district court may consider materials outside the pleadings." *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005). In addition, "[a]lthough a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007).

## A.    WMATA's Sovereign Immunity

"In signing the WMATA Compact, Maryland, Virginia, and the District of Columbia conferred upon WMATA their respective sovereign immunities."  *Beebe v. Washington Metro. Area Transit Auth.*, 129 F.3d 1283, 1287 (D.C. Cir. 1997).  Thus, unless WMATA's sovereign immunity has been waived, a district court lacks jurisdiction to enter a judgment against it.  *See Burkhart v. Washington Metro. Area Transit Auth.,* 112 F.3d 1207, 1216 (D. C. Cir.1997); *Watters v. Washington Metro. Area Transit Auth.*, 295 F.3d 36, 39–40 (D.C. Cir. 2002).  Section 80 of the WMATA Compact "waives WMATA's sovereign immunity for contractual disputes" and "for torts 'committed in the conduct of any proprietary function,'" while retaining immunity

for torts committed by its agents 'in the performance of a governmental function.'"[7] *Beebe*, 129

F.3d at 1287, 1290 (quoting D.C. Code Ann. § 9-1107.01); *see also Martin v. Washington Metro.*

*Area Transit Auth.*, 273 F. Supp. 2d 114, 119 (D.D.C. 2003) ("WMATA's defense of sovereign

immunity is inapplicable to [plaintiff's] claims for breach of contract and breach of the implied

duty of good faith and fair dealing, these claims being based on an alleged contract under which

WMATA agreed to follow its published hiring procedures."); *KiSKA Const. Corp.*, 321 F.3d at

1160 ("[S]ection 80 distinguishes between tort claims and contract claims, affording a limited

waiver of sovereign immunity with respect to the former and a complete waiver of sovereign

immunity with respect to the latter"). "To determine whether a tort was committed in the

performance of a government function, courts ask whether the activity amounts to a

'quintessential' governmental function, like law enforcement." *Beebe*, 129 F.3d at 1287. "If so,

the activity falls within the scope of WMATA's sovereign immunity." *Id.* In most situations

though, "it is difficult to distinguish between public and private sector functions with any

precision," so courts ask whether the activity is "discretionary" or "ministerial." *Id*.

Discretionary functions are shielded by sovereign immunity; ministerial functions are not. *Id*.

---

[7] Section 80 of the WMATA Compact provides that:

> The Authority shall be liable for its contracts and for its torts and those of its
> Directors, officers, employees and agent committed in the conduct of any
> proprietary function, in accordance with the law of the applicable signatory
> (including rules on conflict of laws), but shall not be liable for any torts occurring
> in the performance of a governmental function. The exclusive remedy for such
> breach of contracts and torts for which the Authority shall be liable, as herein
> provided, shall be by suit against the Authority. Nothing contained in this Title
> shall be construed as a waiver by the District of Columbia, Maryland, Virginia
> and the counties and cities within the Zone of any immunity from suit.

D.C. Code Ann. § 9-1107.01.

**B.  Discretionary Actions (Counts I-III)**

WMATA first argues that sovereign immunity protects it from FiberLight's claims because "any actions taken by WMATA related to the complaint were discretionary." (Mot. at 8.)  The problem with WMATA's argument is that the discretionary/ministerial distinction is only relevant when deciding if WMATA is immune from a particular *tort* claim.  FiberLight is insistent that it is not bringing any tort claims.  (*See* Opp'n at 15 ("WMATA's Motion to Dismiss expends a great deal of effort to recast FiberLight's claims as tort claims, despite the fact that they unquestionably sound in contract and demand money damages for a breach of contract.")  It is well-established that it is a plaintiff's prerogative to select the claims it wishes to bring; thus, WMATA may not simply recharacterize a contract-based claim as a tort claim and then assert sovereign immunity.  *See, e.g., Vakassian v. Washington Metro. Area Transit Auth.*, No. 05-cv-0741, 2005 WL 3434794, at *3 (D.D.C. Dec. 14, 2005)  ("[T]he law allows plaintiffs to be the "masters of their cases"; so long as a claim is properly colorable under the law, the plaintiff may choose to pursue it, even though the defendant may believe that a different legal avenue is more appropriate.  Defendant may not, at its whim, convert plaintiff's breach of contract claim into a claim that sounds in tort, and then assert that sovereign immunity precludes that tort claim.")  Accordingly, WMATA's "discretionary actions" argument is without merit.

**C.  Equitable Remedies (Counts I-III)**

WMATA next argues that even though the WMATA Compact "expressly waives WMATA's sovereign immunity with respect to liability arising out of its contracts," the waiver does not apply here because FiberLight is essentially seeking reformation of the License Agreement -- an "equitable or quasi-contractual remedy." (Mot. at 11-12.)  Thus, WMATA argues, FiberLight is "bringing a suit in equity" as to which there is no waiver of sovereign immunity.

Applying the principle that a waiver of sovereign immunity must be clear and unequivocal, courts have held that WMATA is immune from certain equitable claims. *See, e.g.*, *Watters*, 295 F.3d at 41 (immunity not waived for claim of "breach of duty to enforce an attorney's lien"); *In re Fort Totten Metrorail Cases Arising Out of Events of June 22, 2009*, 895 F. Supp. 2d 48, 67 (D.D.C. 2012) ("WMATA has not waived its sovereign immunity as to equitable indemnification claims"); *Martin v. WMATA*, 273 F. Supp. 2d at 118 n.7 ("WMATA is immune from [plaintiff's] promissory estoppel claim."). However, WMATA has not cited any case, and the Court has found none, that holds that despite the express waiver of immunity in Section 80 for contract claims, WMATA is immune from a contract claim simply because it seeks "equitable" remedies in addition to damages. Moreover, even if Section 80 does not generally waive WMATA's sovereign immunity as to an equitable remedy for a breach of contract claim, WMATA has contractually waived its immunity in the License Agreement as it expressly allows for "equitable adjustment to the payment terms" and provides that any dispute is to be resolved by litigation in federal district court. (*See* License Agreement, arts. 21.1, 27.5.); *see, e.g., Gen. Ry. Signal Co. v. Washington Metro. Area Transit Auth.*, 625 F. Supp. 22, 24 (D.D.C. 1985) ("Waiver occurred here by virtue of the 'equitable adjustment' language in the 'Changes' clause of the contract."), *aff'd*, 875 F.2d 320 (D.C. Cir. 1989). Accordingly, WMATA is not immune from FiberLight's claims simply because they seek "equitable remedies."

### D. Declaratory Judgment (Count II)

WMATA final immunity argument is that even if Counts I and III can proceed, Count II should be dismissed because WMATA has not expressly waived its immunity as to declaratory judgments. The Declaratory Judgment Act, though, merely provides an additional remedy where the federal court already has jurisdiction. *See Clayton v. District of Columbia*, 931 F. Supp. 2d

13

192, 201 (D.D.C. 2013). Here, the Court has concluded that it has jurisdiction over FiberLight's breach of contract and breach of the duty of good faith and fair dealing claims, so it also has jurisdiction over a declaratory judgment claim based on the same allegations. Accordingly, the lack of an express waiver for a declaratory judgment action does not protect WMATA from FiberLight's declaratory judgment claim.

* * *

Having concluded that WMATA's sovereign immunity does not bar FiberLight's claims, the Court will not dismiss the complaint for lack of jurisdiction and will proceed to consider WMATA's other arguments for dismissal.

## II.    FAILURE TO STATE A CLAIM

WMATA next argues that FiberLight's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim because (1) the claims are barred by the three-year statute of limitations; (2) the complaint fails to adequately allege the essential elements of each claim; or (3) the complaint fails to satisfy the *Twombly/Iqbal* pleading standard.

"In ruling on a motion to dismiss for failure to state a claim, the court must 'accept as true all of the factual allegations contained in the complaint,'" *Phillips v. Fulwood*, 616 F.3d 577, 581 (D.C. Cir. 2010) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and "construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). However, the court will "not accept inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations." *Id.* (citations omitted).

## A.   Statute of Limitations

A defendant is entitled to succeed on a Rule 12(b)(6) motion to dismiss brought on statute of limitations grounds only "when the facts that give rise to the [affirmative] defense are clear from the face of the complaint" and the claim is "conclusively time barred." *Smith–Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir.1998); *see Bregman v. Perles*, 747 F.3d 873, 875 (D.C. Cir. 2014). WMATA argues that each of FiberLight's claims is barred by the three-year statute of limitations that applies to contract claims in the District of Columbia. (Mot. at 5 (citing D.C. Code Ann. § 12-301(7)).) WMATA argues that Count I is barred because the alleged misrepresentation in Article 14.1 "was made at the time of the execution of the Agreement, thereby giving rise at that time – 2006 – to a putative claim for breach [of contract]," and that Counts II and III are also time-barred because they rest on the "same misrepresentation" asserted in Count I.[8] (Mot. at 5, 7.) FiberLight agrees that the applicable statute of limitations is three years, but otherwise disagrees with WMATA's analysis.

### 1.   Count I

"Under D.C. Code § 12–301(7), in order to maintain a cause of action on a simple contract, express or implied, a lawsuit must be brought within three years following the accrual of the claim." *Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1198 (D.C. 1984). Although "[t]he term 'accrual' is left undefined by the statute and is thus left to judicial interpretation," it is "well-settled" by District of Columbia courts that a breach of contract claim generally "accrues"

---

[8] WMATA's argument ignores that part of Count I is based on alleged breaches of Articles 21.1 and 27.4 of the License Agreement and that those alleged breaches are based on WMATA's actions in 2014. (*See* Am. Compl. ¶ 83 ("WMATA breached Articles 21.1 and 27.4 of the License Agreement when it failed to negotiate in good faith an equitable adjustment to the payment terms of the License Agreement after it was advised of its materially untrue statement.").) Presumably, though, its position is that this part of Count I, like Counts II and III, is barred because it depends on proof of the "same misrepresentation."

when a contract is "first breached." *Id*. at 1198-99; *see also Capitol Place I Assocs. L.P. v. George Hyman Const. Co.*, 673 A.2d 194, 198 (D.C. 1996); *Western Union Tel. Co. v. Massman Const. Co.*, 402 A.2d 1275, 1277 (D.C. 1979). Despite this general rule, Fiberlight argues, relying on the "discovery rule," that its breach of contract claim based on the alleged misrepresentation in Article 14.1 did not accrue in 2006, when the License Agreement was entered into, but rather accrued in 2014, when it "first discovered" the misrepresentation. (Opp'n at 7.)

"Under the discovery rule, a cause of action accrues for limitations purposes 'when the plaintiff has either *actual notice* of her cause of action or is *deemed to be on inquiry notice* because if she had met her duty to act reasonably under the circumstances in investigating matters affecting her affairs, such an investigation, if conducted, would have led to actual notice.'" *Harris v. Ladner*, 828 A.2d 203, 205–06 (D.C. 2003) (emphasis added) (quoting *Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996)); *see also Capitol Place I Assocs. L.P. v. George Hyman Const. Co.*, 673 A.2d 194, 198–99 (D.C. 1996) ("accrual occurs pursuant to the discovery exception when a party knows or by the exercise of reasonable diligence should know: (1) of the injury; (2) the injury's cause in fact; and (3) of some evidence of wrongdoing").

Here, the amended complaint alleges that FiberLight had actual notice in 2014, within the three-year statute of limitations period. (*See* Am. Compl. ¶ 34 ("WMATA's materially untrue representation in Article 14.1 of the License Agreement was not discovered by FiberLight until 2014"); *see also* Am. Compl. ¶ 27 ("In 2014, FiberLight first discovered that WMATA appeared not to have 'the power and authority . . . to lease conduit rights in the WMATA ROW' to FiberLight"). The amended complaint further alleges that FiberLight should not be deemed to have been on inquiry notice any earlier than when it had actual notice as FiberLight "reasonably

relied upon the representation by WMATA, reasonably assuming that it would not attempt to license real or personal property rights that it did not possess." (Am. Compl. ¶ 28; *see also* Am. Compl. ¶ 36 ("[I]f WMATA itself cannot plainly and readily state its ownership interest, it cannot charge FiberLight for such interest or claim that such interest was readily discoverable by FiberLight.").)

Despite these allegations, WMATA argues that "the discovery rule is inapplicable because FiberLight had the ability to discover the alleged misrepresentation at the time of contract formation."[9] (Reply at 2.) Essentially, WMATA's position is that FiberLight's allegation that it reasonably relied on WMATA's affirmative representation in Article 14.1 should be rejected as a matter of law and that it should be deemed to have been on inquiry notice

---

[9] WMATA also suggests more broadly that under District of Columbia law the discovery rule can never be applied to a breach of contract claim unless it is intertwined with a tort claim. (*See* Reply at 3-4.) This is not the current law in the District of Columbia. In making this argument, WMATA cites to the D.C. Court of Appeals' decision in *Ehrenhaft*, which held that the "discovery rule" applies to "an action based upon tort and contract claims arising out of allegedly deficient design and construction of an addition to a house." 483 A.2d at 1203. Although in reaching this conclusion the court in *Ehrenhaft* expressly declined to hold that the discovery rule applies in *all* cases, it did not rule out the possibility that it could apply to a contract claim that was not intertwined with a tort claim. *Id.* at 1204. Rather, it "decided only the instant case, leaving to the future the application of the [discovery] rule by analogy to the facts." *Id.* In subsequent cases, courts have generally considered the particular facts of a case before deciding whether the discovery rule applies to a breach of contract claim and, if so, whether its requirements have been satisfied. *See, e.g.*, *Harris*, 828 A.2d at 205-06 (applying discovery rule, but finding that the plaintiff could not satisfy its requirements); *Sea Search Armada v. Republic of Colombia*, 821 F. Supp. 2d 268, 272 (D.D.C. 2011) (same), *aff'd*, 522 F. App'x 1 (D.C. Cir. 2013); *Estate of Grant v. Armour Pharm. Co.*, No. 04-cv-1680, 2007 WL 172316, at *3 (D.D.C. Jan. 23, 2007) (same); *Hensel Phelps Constr. Co. v. Cooper Carry, Inc.*, 210 F. Supp. 3d 192, 197 (D.D.C. 2016) (noting potential availability of discovery rule for a breach of contract claim "if there is a lag between the moment of breach and the time when the plaintiff discovers the breach"); *James v. Miche Bag Corp.*, 967 F. Supp. 2d 365, 369 (D.D.C. 2013) (noting that discovery rule could not save plaintiff's breach of contract claim where plaintiff had actual knowledge of the breach at the time it occurred), *aff'd sub nom. James v. Miche Bag, LLC*, No. 13-7193, 2014 WL 2178735 (D.C. Cir. Apr. 18, 2014); *C.B. Harris & Co., Inc. v. Wells Fargo & Co.*, 113 F. Supp. 3d 166, 170–72 (D.D.C. 2015) (rejecting application of discovery rule to particular breach of contract claim based on underlying facts).

of its breach of contract claim from the date the License Agreement took effect.  FiberLight argues that it has adequately alleged a factual basis for its reliance, asking the Court to consider (1) "that WMATA, a multi-billion dollar entity spanning three sovereign jurisdictions, represented a property interest in its tunnels and it was reasonable for FiberLight to rely on this representation, since WMATA's metro trains traverse the tunnels and WMATA maintains the tunnels"; (2) "FiberLight's natural proclivity to accept the word of a government entity that it had a right to lease the real property that it was contracting to lease"; (3) that "it was in fact reasonable for FiberLight to not conduct an exhaustive investigation, particularly where, as here, WMATA was willing to provide an explicit contractual remedy in the event any of its material representations proved untrue"; and (4) that "other carriers much larger than FiberLight likewise entered into similar contracts on the eminently reasonable assumption that a government entity would not attempt to lease property that it does not own."  (Opp'n at 9.)

It is certainly possible that WMATA's position will prevail in the end, if FiberLight is not able to satisfy the requirements for application of the discovery rule.  *See, e.g.*, *East v. Graphic Arts Industry Joint Pension Trust*, 718 A.2d 153, 157 (D.C. 1998) ("The discovery rule does not apply to circumstances . . . where the plaintiff has failed to discover the relevant law even though the existence of an injury is apparent."); *see also Tolbert v. Nat'l Harmony Mem'l Park*, 520 F. Supp. 2d 209, 212 (D.D.C. 2007) ("Knowledge of facts, and not knowledge of the legal significance of those facts, controls the time of accrual.")  However, "a trial judge may determine the date of accrual 'as a matter of law only if no reasonable person could disagree on the date.'"  *See Tolbert*, 520 F. Supp. 2d at 211 (quoting *Kuwait Airways Corp. v. American Sec. Bank, N.A.*, 890 F.2d 456, 463 n.11 (D.C. Cir. 1989)).  That is not the case here.  Taking the factual allegations of the complaint as true, and drawing all reasonable inferences in FiberLight's favor,

it is not apparent from the face of the complaint that the discovery rule is inapplicable. It, therefore, is not apparent that FiberLight's breach of contract claim based on the alleged misrepresentation in Article 14.1 accrued in 2006 and not in 2014. Accordingly, Count I will not be dismissed as barred by the statute of limitations.[10]

### 2. Counts II and III

WMATA argues that Counts II and III should be dismissed as time-barred because they rest on the "same misrepresentation" as Count I. Without expressing any opinion on the ultimate merits of this argument, it clearly fails at this point given the Court's conclusion that Count I cannot be dismissed on statute of limitations grounds.[11]

### B. Failure to Allege Essential Elements

As FiberLight's claims are not barred by the three-year statute of limitations, the Court turns to WMATA's argument that the amended complaint fails to allege the essential elements of each claim.

### 1. Counts I and II

WMATA initially argues that Counts I and II fail to state a claim because the complaint fails to allege two essential elements of a claim for "fraudulent misrepresentation" – "a false

---

[10] Fiberlight argued in the alternative that under the "installment contract rule" each annual invoice constituted a new breach and started a new three-year statute of limitations because "every year, WMATA sends FiberLight an invoice misrepresenting a property interest and in return receives monetary compensation based on that misrepresentation." (Opp'n at 12.) Under that theory, FiberLight would at least be able to bring a breach of contract claim covering the invoices from 2014 and thereafter. As the breach of contract claim is not being dismissed on statute of limitations grounds, though, there is no need to address the merits of this argument now.

[11] If it ultimately turns out that the all or part of Count I is barred by the statute of limitations, Count II will be barred to the same extent. *Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*, 937 F. Supp. 2d 18, 38 (D.D.C. 2013) ("As a general rule, an action for declaratory judgment will be barred to the same extent the applicable statute of limitations bars an underlying action in law or equity.")

representation [by WMATA] and justifiable reliance by FiberLight."[12] (Mot. at 14.) But, as FiberLight points out, Counts I and II are not tort claims for fraudulent mispresentation. (Opp'n at 26 ("FiberLight's claim is in breach of contract, that WMATA breached, *inter alia*, Articles 14 and 21 of the License Agreement.").) Rather, FiberLight has opted, as it is entitled to do (*see supra* I(A)), to bring only a claim for breach of contract and to seek a declaratory judgment based on that alleged breach. Accordingly, the complaint need not allege the essential elements of a claim for fraudulent misrepresentation.

In its reply, WMATA reformulates its argument, contending that the complaint also fails to adequately allege the elements of a breach of contract claim. The elements of a breach of contract claims are: "(i) that a valid contract existed between the parties; (ii) an obligation or duty arising out of that contract; (iii) a breach of that duty; and (iv) damages caused by the breach." (Reply at 13 (citing *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009)). WMATA argues that the complaint fails to adequately allege a breach of Article 14.1 because "FiberLight failed to plead any facts that would support its claim that the event of breach – a WMATA misrepresentation – has even occurred." (Reply at 13.) To support this argument WMATA focuses on the fact that the amended complaint does not specify what "information" FiberLight discovered in 2014 that led it to question the accuracy of the Article 14.1 representation. (*See* Reply at 14 ("FiberLight continues to assert that "sometime" in 2014, it learned that WMATA did not have the power and/or authority to lease conduit rights to the WMATA System, but fails to provide what "fact" inspired this belief. There is no indication that

---

[12] In the District of Columbia, the elements of a "fraudulent misrepresentation" claim are: (1) a false representation; (2) in reference to a material fact; (3) the plaintiff relied upon the assertion; (4) plaintiff was justified in its reliance; and (5) plaintiff relied to its detriment." (Mot. at 14 (citing *Resolution Trust Corp. v. District of Columbia*, 78 F.2d 606, 609 (D.C. Cir. 1996)).)

FiberLight did any kind of independent research as to the ownership rights of the WMATA System, or any indication that a third party suddenly appeared and challenged ownership of the WMATA System.")  But precisely how or why FiberLight came to believe that Article 14.1 was "materially untrue" is not relevant.  What matters is whether the complaint has adequately alleged a breach of Article 14.1.

The amended complaint alleges FiberLight is a certified communications provider in the District of Columbia; that as such it has the right to utilize the public rights-of-way; that portions of the WMATA ROW (as defined by the License Agreement) are part of the public rights-of-way; and that there is no deed or other evidence that conclusively establishes that WMATA has the right to lease conduit rights in those parts of the WMATA ROW.  FiberLight's conclusion may not be correct, but these factual allegations, viewed in the light most favorable to FiberLight and drawing all inferences in FiberLight's favor, are adequate to support the allegation that WMATA breached the License Agreement by misrepresenting in Article 14.1 its power and authority to lease conduit rights in the WMATA ROW.

### 2.    Count III

In the District of Columbia, "all contracts contain an implied duty of good faith and fair dealing, which means that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'"  *Allworth v. Howard Univ.,* 890 A.2d 194, 201 (D.C. 2006) (quoting *Paul v. Howard Univ.,* 754 A.2d 297, 310 (D.C. 2000)).  Liability lies for breach of the duty if a party (1) evades the spirit of the contract, (2) willfully renders imperfect performance, or (3) interferes with performance by the other party.  *C & E Services, Inc. v. Ashland Inc.*, 601 F. Supp. 2d 262, 276 (D.D.C. 2009).  WMATA argues that Count III fails to state a claim for breach of the duty of good faith and fair dealing "[t]o the extent Count III alleges a cause of action arising outside of the contract between

the parties." (Mot. at 16.) WMATA's specific argument focuses on the allegation that one of the ways in which WMATA breached this duty was when it "[c]ommitted, in a meeting on September 14, 2016, to provide [FiberLight] a detailed explanation of its legal authority and property rights but failed to do so." (Am. Compl. ¶ 97(a).) According to WMATA, its alleged failure to provide the promised information could not constitute a breach of the duty of good faith and fair dealing because nothing in the License Agreement expressly requires WMATA to provide that information. (Mot. at 16 (citing *C & E Services*, 601 F. Supp. 2d at 275).)

WMATA's argument suffers from several problems. First, the allegation WMATA cites is only one of several allegations supporting Count III (*see* Am. Compl. ¶ 97(b)-(d)), and WMATA does not contend that any of these other allegations seek to impose an obligation on WMATA that arises "outside" of the License Agreement. In addition, the Court does not agree with WMATA's view that allowing the claim to proceed based on the allegation in ¶ 97(a) would impermissibly "add new terms to the agreement." *See C & E Services*, 601 F. Supp. 2d at 276. Rather, as FiberLight points out, the allegation in ¶ 97(a) that WMATA breached its duty of good faith and fair dealing by failing to provide the information FiberLight sought and was promised is clearly "founded on" the License Agreement – both the representation in Article 14.1 and FiberLight's request pursuant to Article 21.1 for good faith negotiations. That is all that the law requires to state a claim. Accordingly, Count III will not be dismissed for failure to allege an essential element.[13]

---

[13] In the alternative, WMATA argues that Count III should be dismissed because "other count[s] of the complaint incorporate that claim." (Mot. at 16.) WMATA's argument relies on *Washington Metro. Area Transit Auth. v. Quik Serve Foods, Inc*., No. 04-cv-0687, 2006 WL 1147933 (D.D.C. Apr. 28, 2006), in which the court held that a claim for breach of the covenant of good faith and fair dealing is not a viable independent cause of action "when the allegations are *identical* to other claims for relief under [an] established cause of action." *Id*. at *5 (emphasis added). The Court does not find *QuikServe* to be persuasive. First, while the

## C.    *Twombly*/*Iqbal*

WMATA next argues that the complaint "fails to state a claim under the *Twombly*/*Iqbal*

standard, because FiberLight's allegations amount to little more than a collection of legal

conclusions and conjecture, unsupported by any facts, or even factual allegations, indicating that

FiberLight's claims are plausible on their face."  (Mot. at 18.)

The Supreme Court's decisions in *Twombly* and *Iqbal* establish that a court should

dismiss a complaint for failure to state a claim if the complaint does not "contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)); *Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).  To state a facially plausible

claim, a complaint must set forth "factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A

complaint that pleads factual allegations that are "'merely consistent with' a defendant's liability

... 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.*

(quoting *Twombly,* 550 U.S. at 557).  While the factual allegations need not be "detailed," the

Federal Rules demand more than "an unadorned, the-defendant-unlawfully-harmed-me

---

allegations supporting Count III certainly overlap with the allegations supporting Count I, they
are not "identical."  In addition, the holding in *QuikServe* has been rejected by other judges in
this district. *See, e.g.*, *Jacobson v. Hofgard*, 168 F. Supp. 3d 187, 208 (D.D.C. 2016) (rejecting
*QuikServe*'s holding and noting that *QuikServe* relied on a case which addressed the issue in the
context of a legal malpractice case, not a contract case).  Finally, there is no requirement at the
pleadings stage to choose between alternative remedies.  *See Modern Mgmt. Co. v. Wilson*, 997
A.2d 37, 44 n.10 (D.C. 2010) ("[A] plaintiff is not required to elect between ... alternative claims
before the case is submitted to the jury" (citation and internal quotation marks omitted)); *see also
Jacobson v. Hofgard*, 168 F. Supp. 3d at 208 ("Plaintiffs are not required at the pleadings stage
to choose between alternative remedies.").

accusation." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

WMATA argues that there are insufficient factual allegations to support FiberLight's contention – which is critical to each of its legal claims – that WMATA misrepresented its right to lease conduit rights in its subway tunnels. (Mot. at 18-19.) However, the Court has already found, in rejecting WMATA's argument that Counts I and II should be dismissed for failure to allege the essential elements of a breach of contract claim, that the amended complaint adequately alleges a misrepresentation. Accordingly, WMATA's argument is without merit.

## III. FEDERAL RULE OF CIVIL PROCEDURE 9(b)

Federal Rule of Civil Procedure Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Courts have interpreted this to mean that a plaintiff must plead with particularity "matters such as the time, place, and content of the false misrepresentations, the misrepresented fact, and what the opponent retained or the claimant lost as a consequence of the alleged fraud." *Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 253 (D.D.C. 2004). WMATA argues that Count I should be dismissed for failing "to satisfy the heightened-pleading requirements for fraud and mistake under Rule 9(b)." (Mot. at 19.) Even though Count I is a claim for breach of contract, WMATA contends that Rule 9(b) applies "[t]o the extent that FiberLight's complaint is more accurately characterized as asserting claims for fraudulent inducement, fraudulent misrepresentation or negligent misrepresentation." (Mot. at 19.) In response, FiberLight insists that Count I is only a claim for breach of contract and thus "need not meet the requirements of Rule 9(b)." (*See* Opp'n at 38 ("FiberLight's claim is not a fraud claim at this time.").) In the alternative, FiberLight contends that the complaint's allegations "easily satisf[y]" the heightened Rule 9(b) standard.

WMATA's argument is without merit as it rests, once again, on a recharacterization of the breach of contract claim FiberLight has brought. As the Court has previously noted, it cannot do this. And Rule 9(b) does not apply to a breach of contract claim. *See, e.g.*, *Citigroup Mortg. Loan Trust 2007-AMC3 ex rel. U.S. Bank, Nat. Ass'n v. Citigroup Glob. Markets Realty Corp.*, No. 13 CIV. 2843, 2014 WL 1329165, at *4 (S.D.N.Y. Mar. 31, 2014) ("[Where] Plaintiff seeks a cognizable remedy on a traditional breach of contract claim that does not sound in fraud, Rule 9(b) does not apply"). In addition, even if Rule 9(b) were to apply, FiberLight has pleaded with sufficient particularity the "time, place and content" of any possible misrepresentation. *See United States ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 193 (D.D.C. 2011) (Courts "must not rigidly apply the requirements of Rule 9(b), but rather should analyze the Rule on a case by case basis."). Accordingly, WMATA's argument that Count I should be dismissed for failure to comply with Rule 9(b) is rejected.

## CONCLUSION

For the reasons stated above, WMATA's motion to dismiss FiberLight's amended complaint will be denied. A separate Order accompanies this Memorandum Opinion.

/s/   *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge

Date: June 12, 2017