# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FIBERLIGHT, LLC, | ) |
|     Plaintiff/Counter-Defendant, | ) |
| v. | )    Civil Action No. 16-2248 (ESH) |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, | ) |
|     Defendant/Counter-Plaintiff. | ) |

## MEMORANDUM OPINION AND ORDER

Following a telephone conference call on October 11, 2017, the Court ordered briefing on the question of whether defendant WMATA had properly redacted portions of a document produced by non-party Kingston Cole & Associates in response to a third-party subpoena *duces tecum* from plaintiff FiberLight. (*See* Order at 1-2, ECF No. 49.) WMATA filed its memorandum on October 16, 2017, ECF No. 51 (WMATA Mem.), and FiberLight filed its memorandum on October 19, 2017, ECF No. 52 ("FiberLight Mem."). Having considered these memoranda, and for the reasons stated herein, the Court will allow the redactions.

### BACKGROUND

In the above-captioned case, FiberLight alleges that WMATA has breached their 2006 License Agreement. The document at issue is a report that was prepared by Kingston Cole for WMATA in 1999. (*See* Kington Cole & Associates, *Report and Recommendations To The Washington Area Metropolitan Area Transit Authority Regarding Strategic Development of Telecommunications Opportunities* at 1 (June 1, 1999) ("Kingston Report").) It "comprises a

series of findings and recommendations regarding the current status and potential for future development of [WMATA's] fiber optic telecommunications system." (*Id*. at 1.) Section IV of the document is entitled "Problem Areas," and WMATA has redacted the entirety of subsection A of Section IV, which is entitled "Legal Concerns." (*Id*. at 4-5.) After FiberLight raised an objection to the redaction of Section IV.A, the Court ordered WMATA to produce an unredacted version of the Kingston Report for the Court's *in camera* review and held a telephone conference call, which led to its order asking for further briefing.

## ANALYSIS

WMATA asserts that the redaction of Section IV.A is proper either because (1) the entire Kingston Report, including the material in Section IV.A., is irrelevant; or (2) the material in Section IV.A is protected by the attorney-client privilege. (*See* WMATA Mem. at 1, ECF No. 51.) As explained *infra*, the Court agrees with WMATA on both points.

### A. Relevance

WMATA argues that the Kingston Report is not relevant because "[u]nder FiberLight's theory of the case, the sole issue in this matter is the accuracy of WMATA's representation in the License Agreement that it 'has the power and authority to own and operate the WMATA System, and to lease conduit rights in the WMATA ROW to FiberLight,'" (WMATA's Mem. at 3 (quoting Am. Compl. ¶¶ 10, 29)), whereas the subject of the Kingston Report is "'the current status and potential for future development of the [WMATA] fiber optic telecommunications system.'" (*Id*. (quoting Kingston Report at 2).) FiberLight's response is threefold: (1) that WMATA "conceded the Report's relevance" by producing it; (2) that the Kingston Report is relevant because it "addresses WMATA's authority to enter into other License Agreements"; and (3) even if the Kingston Report relates only to WMATA's "own" fiber optic system, it is relevant because "[t]he issue of whether WMATA's fiber is being used for its own transit or

2

related purposes is at issue in the litigation (*e.g.,* the License Agreement provides fiber to WMATA for its own use)." (FiberLight Mem. at 2.)

WMATA's arguments are persuasive. First, FiberLight cites no authority for the proposition that production of a document is a concession of its relevance, especially with respect to the redacted portions of a document.

Second, FiberLight provides no citation to support its contention that the Kingston Report "addresses WMATA's authority to enter into other License Agreements," and the Court's review of the Kingston Report reveals only two mentions of "license agreements," neither of which supports FiberLight's characterization. The first mention of a "license agreement" is a "recommendation" that WMATA "[i]mpose a minimum six month moratorium that prohibits execution of any license agreements between WMATA and telecommunications carriers for access into the Authority's rights-of-way (ROW)" (Kingston Report at 2), which says nothing about WMATA's "*authority* to enter into other License Agreements." The second reference is redacted because it appears in Section IV.A, but the Court has reviewed it and confirmed that it too has nothing to do with WMATA's "authority" to enter into other license agreements.

Finally, FiberLight's only citation to support its contention that "[t]he issue of whether WMATA's fiber is being used for its own transit or related purposes is at issue in the litigation" is to paragraph 59 of the Amended Complaint, but paragraph 59 does not allege anything having to do with WMATA's use of its own fiber.[1] The License Agreement does provide that

---

[1] Paragraph 59 of the First Amended Complaint, which appears under the heading "WMATA Has Not Cited to Authority Granting It Ownership of the Leased Rights-of-Way," states in its entirety:

> Likewise, WMATA has cited to Federal Transit Authority ("FTA") documents to justify the leasing of real property in the tunnels. But of course FTA regulations encouraging the incidental use of real property only apply to real property owned by WMATA, not to the public rights-of-way, the unmitigated use of which is

3

FiberLight will provide WMATA with dark fiber for WMATA's own use (*see* License Agreement, art. 3.4), but FiberLight's breach of contract claims do not pertain to that aspect of the agreement. (*See* First Am. Compl. ¶ 23 ("This case is, *inter alia*, a breach of contract action involving WMATA's breach of the License Agreement and implicates the following Articles of the License Agreement: Article 1, Article 14.1, Article 20.1(c), Article 21.1, and Article 27.4. WMATA has breached Article 14.1, Article 21.1, and Article 27.4.").)

Accordingly, the Court agrees with WMATA that the Kingston Report is not relevant to the present litigation.

### B. Attorney-Client Privilege

In the alternative, WMATA argues that the redacted material is protected by the attorney-client privilege. The Court agrees. The Kingston Report is designated on its face as including attorney-client information, the section containing the redacted material is entitled "Legal Concerns," and the Court's review confirms that it reflects the views of WMATA legal counsel regarding potential legal issues that could arise from the development and expansion of WMATA's own telecommunications system. Under *F.T.C. v. GlaxoSmithKline*, 294 F.3d 141, 148 (D.C. Cir. 2002), the sharing of such privileged information with a consultant who needs that information in order to complete a project for the company does not constitute a waiver of

---

conferred on public utilities like FiberLight. For example, FTA directives on incidental use concern private and not public property: "This area concerns the post construction management of ***property acquired for the facility*** during project development to ensure that it is properly maintained and operated efficiently for the benefit of the transit system." FTA Circular 5010.1d, Page IV-10, Nov. 1, 2008 (emphasis added). Such regulations may apply to property already acquired by WMATA, but they do not confer ownership on WMATA of the public rights-of-way.

(Am. Compl. ¶ 59.)

the privilege. Accordingly, the Court concludes that WMATA properly withheld Section IV.A of the Kingston Report pursuant to the attorney-client privilege.

## CONCLUSION

Having concluded that the Kingston Report is not relevant to the present litigation or, in the alternative, that Section IV.A. is protected by the attorney-client privilege, the Court upholds WMATA's redaction of Section IV.A.

/s/  *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge

Date: January 18, 2018

5