# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FIBERLIGHT, LLC, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 16-2248 (ESH) |
| | ) | |
| WASHINGTON METROPOLITAN | ) | |
| AREA TRANSIT AUTHORITY, | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff FiberLight, LLC ("FiberLight"), a provider of fiber optic cables to government and commercial customers in the Washington, D.C. area, contracted in 2006 with defendant Washington Metropolitan Area Transit Authority ("WMATA")—a publicly-funded entity that operates the Washington region public transit system—to place its fiber optic cables within the WMATA System. (Am. Compl. ¶¶ 1, 9, 10, ECF No. 13.)[1] In 2014, FiberLight stopped paying the contractually required license fees because it began to question WMATA's authority to charge them. (*Id.* ¶¶ 22, 27; Am. Countercls. ¶ 17, ECF No. 15.) After two years of correspondence and meetings failed to resolve the parties' disagreement (Am. Countercls. ¶ 18), FiberLight brought this suit in 2016, alleging that 1) WMATA breached the October 23, 2006 License Agreement ("License Agreement" or "Agreement," ECF No. 62-6); 2) it was entitled to

---

[1] This opinion utilizes the same definition of "WMATA System" as the License Agreement: "WMATA Conduits, Metrorail Stations and the WMATA ROW." (License Agreement, Art. 1.) The WMATA ROW is defined as "WMATA's surface transportation corridors and underground tunnels." (*Id.*) A "conduit" is a "structure, usually underground or in a subway tunnel, containing one or more ducts." (*Id.*)

a declaratory judgment regarding the parties' legal rights and obligations; and 3) WMATA breached the implied covenant of good faith and fair dealing.  In response, WMATA brought counterclaims alleging that 1) FiberLight was in breach of the contract due to its failure to pay its license fees, and 2) FiberLight was unjustly enriched by maintaining its cables in the WMATA System without paying its license fees.  (Am. Countercls. ¶¶ 26–40.)  Both sides have moved for summary judgment as to liability.  (*See* WMATA's Memo. in Supp. of Mot. for Summ. J., ECF No. 54-1 ("WMATA Mot."); FiberLight's Memo. in Supp. of Cross-Mot. for Summ. J. ("FiberLight Mot."), ECF No. 62-1.)  For the reasons set forth below, the Court grants summary judgment in favor of WMATA on FiberLight's three claims and on WMATA's counterclaim for breach of contract.  The Court grants summary judgment to FiberLight on WMATA's counterclaim for unjust enrichment.

## BACKGROUND

WMATA is an interstate compact agency that was created by the District of Columbia, Virginia, and Maryland to operate the mass transit system in the Washington, D.C. area.  (*See* Am. Compl. ¶ 9; Am. Countercls. ¶ 5.)  It was established in 1967 when its enabling legislation, the WMATA Compact, was passed.  (WMATA's Statement of Undisputed Facts ("WMATA Facts") ¶ 1, ECF No. 58 (citing D.C. Code § 9-1107.1; Md. Code Ann. Transp. § 10-204; Va. Code Ann. §§ 56-529 & 56-530).)  Since its establishment, WMATA has built an expansive public transit railway system, commonly known as "Metro," which today consists of over 117 miles of track, about 50 miles of which is underground.  (WMATA Fiscal Year 2018 Proposed Budget at 1-2, Ex. 2 to WMATA Mot., ECF No. 54-4.)  About 1.1 million trips are made on WMATA's transit system every weekday.  (*Id.*)

Operating, constructing, and maintaining the railway system is costly. WMATA's estimated fiscal year 2018 budget is over $3 billion. (*Id.* at 2-2.) While most of its funding comes from passenger fares and government funding (*id.*), it has in recent years also received revenue from the "Metro Fiber Optic Program." (*Id.* at 2-7.) Under this program, established in 1986, WMATA has received fees from telecommunications providers who install and maintain fiber optic cables within WMATA's railway tunnel system. (*Id.*) In fiscal year 2018, it is expected that WMATA will receive $15.6 million in revenue from its fiber optic cable contracts. (*Id.*)

FiberLight is one of the companies that entered into a fiber optic cable agreement with WMATA. FiberLight is a Delaware limited liability company that "constructs, owns, and operates fiber optic facilities for sale or lease to government and commercial carrier customers in the Washington, D.C. metropolitan area." (Am. Compl. ¶ 1.) FiberLight entered into a License Agreement with WMATA on October 23, 2006. (*Id.* ¶ 10; *see also* License Agreement.) Under the terms of this Agreement, FiberLight received, "a non-exclusive license ("License") to construct, install, operate, maintain, upgrade and replace telecommunications facilities (the "FIBERLIGHT System"), in, over, under, upon, across and through the WMATA System, the Track Bed and the Terminus Stations." (License Agreement, Art. 3.1.)[2] In this Agreement, WMATA made the express representation that "it has the power and authority to own and operate the WMATA System[] and to lease conduit rights" to FiberLight. (*Id.*, Art. 14.1.) The License Agreement specified that it was to be in effect for three years and then renew automatically for an additional ten years. (*Id.*, Arts. 2.1, 2.2.) Article 10 of the Agreement

---

[2] The "FIBERLIGHT System" is "[t]he optical fiber cable, inner ducts, conduits and associated appurtenances thereto, to be constructed and installed by FIBERLIGHT under the terms of th[e] License Agreement." (License Agreement, Art. 1.)

specifies that FiberLight is required to make annual payments and details the method for calculating the license fees owed. (*Id.*, Art. 10.) For approximately eight years, FiberLight made annual license payments to WMATA in accordance with the Agreement. (WMATA Facts ¶ 14.)

In 2013, FiberLight began reviewing its license agreements with railroads and subways around the country, attempting to negotiate new rates with its contractual counterparts where FiberLight felt there was a discrepancy between the rates charged and the entity's authority. (FiberLight's First Supp. Answers to WMATA's First Set of Interrogs. at 7–10, Ex. 17 to WMATA Mot., ECF No. 54-19.) As part of its systematic review, FiberLight sent a letter to WMATA on August 22, 2014, inquiring about WMATA's property rights in its system and its authority to enter into the License Agreement. (*Id.*; Ex. 2 to Am. Compl., ECF No. 13-2.)

WMATA responded in a January 22, 2015 letter, explaining that "WMATA's authority to own and operate the WMATA System is established in the WMATA Compact." (Ex. 12 to WMATA Mot., ECF No. 54-14.) FiberLight did not find this response sufficient to credit WMATA's representation in the Agreement that it has the authority to "lease conduit rights." (Am. Compl. ¶ 30.) As a result, in 2014 FiberLight stopped paying the license fees provided for under the Agreement, and it has not made payments since then. (*See* Am. Countercls. ¶ 17; Am. Compl. ¶ 22.)

On March 10, 2015, FiberLight sent a letter requesting that WMATA provide a basis for its authority to charge fees or, in the alternative, agree to eliminate fees from the Agreement. (Ex. 11 to WMATA Mot., ECF No. 54-13.) FiberLight argued that as a certified telecommunications carrier, it had the independent right to utilize the area below the public

rights-of-way, where the WMATA System is located. (*Id.*; *see also* Am. Compl. ¶ 7.)[3]

WMATA disputed FiberLight's position, and on August 24, 2016, WMATA provided notice that

if FiberLight failed to pay its outstanding balance—two years' worth of invoices—within the

next 15 days, it would be considered in default under Article 20.1(a) of the License Agreement.

(Ex. 10 to WMATA Mot., ECF No. 54-12.) Article 20.1(a) states that an "event of default"

includes "the failure of FIBERLIGHT to make any payment hereunder within fifteen (15)

calendar days after FIBERLIGHT's receipt of notice from WMATA of FIBERLIGHT's failure

to make such payment when due." (License Agreement, Art. 20.1(a).)

On August 30, 2016, FiberLight requested WMATA to engage in negotiations. (Am.

Compl. ¶ 63.) The parties met on September 14, 2016. (*Id.* ¶ 64.) FiberLight alleges that at this

meeting WMATA "advised it would provide FiberLight written evidence to substantiate its

Article 14.1 representations," but according to FiberLight, WMATA later failed to do so. (*Id.* ¶¶

64–65.) On October 14, 2016, WMATA sent FiberLight another letter. (Ex. 14 to WMATA

Mot., ECF No. 54-16.) WMATA reiterated its position that "FiberLight has no right to withhold

payment." (*Id.*) WMATA notified FiberLight:

> If full payment of the past due amount is not received by WMATA
> within fifteen (15) days of the date hereof, WMATA will: (i)
> terminate the Agreement, and (ii) unless FiberLight notifies
> WMATA before the end of the fifteen (15) day period that it will
> need additional time for orderly termination as described in the

---

[3] District of Columbia law defines a public right-of-way as "the surface, the air space above the surface (including air space immediately adjacent to a private structure located on public space or in a public right of way), and the area below the surface of any public street, bridge, tunnel, highway, lane, path, alley, sidewalk, or boulevard used pursuant to District law for public services, including rail lines and electric, natural gas, water, sewer, and communication utilities." D.C. Code § 10-1141.01(3). In support of its argument, FiberLight pointed to D.C. Code § 34-2004(a), which provides that "[a]ny telecommunications provider in the District shall have the right to utilize the public right-of-ways of the District for installation, maintenance, repair, replacement, and operation of its telecommunications system on terms and conditions that are competitively neutral."

> Agreement, immediately discontinue any services provided thereunder. If FiberLight does not require additional time for orderly termination, FiberLight must include its proposed plan as part of its notice and any such proposed plan shall in no event exceed more than sixty (60) days from the date of termination. Otherwise, at the close of the fifteen (15) day period WMATA will advise FiberLight of WMATA's election to accept ownership of the FiberLight System, or have it removed.

(*Id.*)

On October 25, 2016, FiberLight responded, indicating: it believed WMATA to be in violation of Articles 14.1, 21.1, and 27.4; it sought to pursue mediation, just as it had with AMTRAK in a "similar case"; and "[o]ut of an abundance of caution," it "provide[d] notice that it will need additional time to resolve this dispute and, if necessary, provide for orderly termination." (Ex. 15 to WMATA Mot., ECF No. 54-17.) On November 2, 2016, WMATA replied that after "nearly two years" of "good faith negotiations," it was terminating the Agreement and unless it received FiberLight's past-due payment within ten days, it would initiate litigation. (Ex. 13 to WMATA Mot., ECF No. 54-15.) WMATA further stated, "Although WMATA does not currently intend to interrupt whatever service FiberLight provides over its network, WMATA nonetheless puts FiberLight on notice that WMATA has the contractual right to do so in the event FiberLight fails to promptly provide its proposed orderly termination plan." (*Id.*) On November 11, 2016, FiberLight filed this suit against WMATA. WMATA answered and filed counterclaims on December 7, 2016.

The parties continued to exchange letters in December 2016. On December 6, 2016, FiberLight inquired whether it would be given continued access to the WMATA System for the purpose of installing new fiber optic cables. (*See* Ex. 6 to Am. Compl, ECF No. 13-6.) In a December 16, 2016 letter, WMATA declined this request and stated its position that "by

operation of WMATA's termination of the Agreement, the 'FiberLight System' became WMATA's property." (*Id.*)

FiberLight then filed an amended complaint on December 28, 2016. (*See* Am. Compl.) WMATA filed an answer to the amended complaint and amended counterclaims on January 13, 2017. (*See* Am. Countercls.) FiberLight brings three claims in its Amended Complaint: breach of contract, declaratory judgment, and breach of the implied covenant of good faith and fair dealing. WMATA brings two counterclaims: breach of contract and unjust enrichment. WMATA filed a motion to dismiss on January 13, 2017 (ECF No. 16), which was denied by this Court. *See FiberLight, LLC v. Washington Metro. Area Transit Auth.*, No. 16-cv-2248, 2017 WL 2544131 (D.D.C. June 12, 2017).

On November 29, 2017, WMATA filed a motion for summary judgment as to liability on all counts of the Amended Complaint and Amended Counterclaims. (*See* WMATA Mot.) In addition to arguing that it should succeed on the merits as to FiberLight's claims, WMATA also argues that FiberLight's claims are barred by the statute of limitations, estoppel, and waiver. (WMATA Mot. at 12–17.) On December 21, 2017, FiberLight filed a cross-motion for summary judgment as to liability regarding all counts of the Amended Complaint and Amended Counterclaims. (*See* FiberLight Mot.)[4]

---

[4] FiberLight's memorandum in support of its cross-motion for summary judgment appears on the docket twice: one copy of the memorandum was publicly filed with redactions (ECF No. 62-1), while an unredacted copy of the memorandum, as well as select exhibits, are under seal pursuant to the Court's December 22, 2017 Minute Order. (*See* ECF No. 65.) The only portion of FiberLight's under seal filing that is cited in this opinion is Exhibit 6 to FiberLight's Motion, which is a title report. *See infra* at Part II.A.1. The parties' public filings discuss this title report at length, and a redacted copy is available at ECF No. 62-9.

## ANALYSIS

### I.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Where there are "cross-motions for summary judgment, each must carry its own burden under the applicable legal standard."  *Fay v. Perles*, 59 F. Supp. 3d 128, 132 (D.D.C. 2014) (quoting *Ehrman v. United States,* 429 F. Supp. 2d 61, 67 (D.D.C. 2006)).  "Thus, each party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions[,] . . . admissions on files, together with the affidavits . . . which it believes demonstrate the absence of a genuine issue of material fact.'"  *Fay*, 59 F. Supp. 3d at 132 (quoting *Hodes v. Dep't of Treasury,* 967 F. Supp. 2d 369, 372 (D.D.C. 2013)).  "[E]ach side concedes that no material facts are at issue only for the purposes of its own motion."  *Sherwood v. Washington Post*, 871 F.2d 1144, 1148 n.4 (D.C. Cir. 1989) (quoting *McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982)).

Where a moving party has carried its burden, "the responsibility then shifts to the nonmoving party to show that there is, in fact, a genuine issue of material fact."  *Bias v. Advantage Int'l, Inc.*, 905 F.2d 1558, 1561 (D.C. Cir. 1990).  "A dispute is 'genuine' only if a reasonable fact-finder could find for the non-moving party; a fact is 'material' only if it is capable of affecting the outcome of the litigation."  *Physicians Comm. for Responsible Med. v. United States Dep't of Agric.*, 316 F. Supp. 3d 1, 7 (D.D.C. 2018).

## II.    FIBERLIGHT'S CLAIMS

FiberLight brings three claims: breach of contract (Count I), declaratory judgment (Count II), and breach of the implied covenant of good faith and fair dealing (Count III).  The breach of contract claim includes the alleged breach of three provisions of the License Agreement: Article 14.1, Article 21.1, and Article 27.4.[5]  Article 14.1 contains an affirmative representation by WMATA regarding its authority, while Articles 21.1 and 27.4 govern remedies in the event of default and dispute resolution.  The declaratory judgment claim asks that the Court declare WMATA to be in breach of the Agreement and declare the parties' respective rights and obligations.  The breach of implied covenant claim argues that WMATA behaved in bad faith during the parties' pre-litigation discussions.  For the reasons described below, the Court concludes that WMATA is entitled to summary judgment as to each of these claims.

### A.   COUNT I: BREACH OF CONTRACT

There are four required elements for a breach of contract claim: "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Xereas v. Heiss*, 933 F. Supp. 2d 1, 7–8 (D.D.C. 2013) (quoting *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181, 187 (D.C. 2009)).  The parties agree that they entered into a valid contract that imposed obligations upon both parties.  (Am. Compl. ¶ 76; Am. Countercls. ¶ 27.)  The parties' dispute hinges on the third element: whether WMATA breached any article of the License Agreement.  FiberLight contends that WMATA breached Articles 14.1, 21.1, and 27.4.  (Am. Compl. ¶¶ 82–83.)  Each alleged breach will be addressed— and rejected—in turn below.

---

[5] As discussed *infra*, FiberLight also argues that the alleged breaches of these articles involve, *inter alia*, alleged misrepresentations contained within Articles 3.1, 3.4, 5.7, and 13.1.

### 1. Article 14.1

FiberLight's primary argument rests on the assertion that WMATA made a material misrepresentation in Article 14.1 of the License Agreement, which reads:

> WMATA hereby represents that it has the power and authority to own and operate the WMATA System, and to lease conduit rights in the WMATA ROW to FIBERLIGHT for the operation and maintenance of the FIBERLIGHT System and to perform the obligations required of WMATA under this License Agreement.

FiberLight asserts that, contrary to this representation, WMATA does not have the "power and authority . . . to lease conduit rights." (FiberLight Mot. at 18–19.)[6] Fiberlight is mistaken. The WMATA Compact gives WMATA the right "to locate, construct and maintain any of its transit and related facilities in, upon, over, under or across any streets, highways, freeways, bridges and any other vehicular facilities." D.C. Code § 9-1107.01 ("WMATA Compact" or "Compact"), Art. 74. It further authorizes WMATA to "[c]onstruct, acquire, own, operate, maintain, control, sell and convey real and personal property and any interest therein by contract, purchase, condemnation, lease, license, mortgage or otherwise," *id.*, Art. 12(d), and to "[e]nter into and perform contracts, leases and agreements with any person, firm or corporation . . . including, but not limited to, contracts or agreements to furnish transit facilities and service," *id.*, Art. 12(f).

---

[6] While FiberLight's primary argument rests on the "lease conduit rights" portion of Article 14.1, it also makes an unconvincing secondary argument that WMATA misrepresented in Article 14.1 that it had "the power and authority . . . to perform the obligations required of WMATA under this License Agreement" because "WMATA has not performed its obligation to provide FiberLight with the rights-of-way it committed to provide pursuant to . . . Articles 3.1, 3.4, 5.7, and 13.1, as well as Article 14.1 itself." (FiberLight Mot. at 19.) This argument can be easily disposed of, as the Agreement is clear that WMATA did not have an obligation to provide FiberLight with a "right-of-way," but rather had an obligation to provide "a non-exclusive license . . . to construct, install, operate, maintain, upgrade, and replace telecommunications facilities . . . in . . . the WMATA System." (License Agreement, Art. 3.1.) FiberLight's assertion that the Agreement obliged WMATA to lease FiberLight a "right-of-way" is cut out of whole cloth.

This expansive statutory grant provides WMATA with sufficient rights to issue a license to FiberLight.

WMATA points out—and FiberLight appears to concede—that one does not need to own property in fee simple absolute in order to grant a license. (*See* WMATA's Consolidated Opp. to FiberLight's Mot. for Summ. J. & Reply in Supp. of WMATA's Mot. for Summ. J. ("WMATA Reply") at 11 n.7, ECF No. 66 (citing *Keroes v. Westchester Apartments*, 36 A.2d 263, 264 (D.C. Mun. Ct. App. 1944)); FiberLight's Reply to WMATA's Consolidated Opp. & in Supp. of its Cross-Mot. for Summ. J. ("FiberLight Reply") at 11 n.13, ECF No. 70 (conceding that a party with only a leasehold is permitted to enter into a sublease agreement in the absence of a specific restriction).) Thus, this Court need not decide the exact scope of WMATA's property rights in each part of the WMATA System. Whether WMATA has an easement, fee simple ownership, or some other form of property interest entitling it to possession of the WMATA System, the WMATA Compact grants it sufficient authority to enter into the present License Agreement. *See* WMATA Compact, Arts. 12(d), 12(f), 74; Restatement (First) of Property § 512 cmt. i (1944, Oct. 2018 update) (explaining that "[a] license arises through the consent to use land given by one whose interest is or will be affected by the use"; this consent is "ordinarily . . . given by the possessor of the land.").[7]

---

[7] Even if, *arguendo*, it were a misrepresentation that WMATA has the authority "to lease conduit rights in the WMATA ROW" (Agreement, Art. 14.1), any such misrepresentation would be immaterial. After all, the present agreement is a *license* agreement, not a *lease*. *See, e.g.*, *Union Travel Assocs., Inc. v. Int'l Assocs., Inc*., 401 A.2d 105, 107 (D.C. 1979) (explaining the license-lease distinction: "A license confers a privilege to occupy the land of another . . . . [It] confers a personal privilege to act, . . . not a present possessory estate. . . . By contrast, a lease confers upon a tenant exclusive possession of the subject premises as against all the world, including the owner.") FiberLight concedes that WMATA was granting a *license* in the present Agreement. (*See, e.g.*, FiberLight Mot. at 1.) The Agreement cannot reasonably be read as granting a lease. (*See* Agreement, Art 3.1 ("WMATA grants to FIBERLIGHT a non-exclusive license"); *id.*, Art. 3.3 ("No use or rights granted in this License Agreement . . . shall create or vest in

FiberLight's argument that WMATA does not have the requisite property rights to enter into the License Agreement appears to rest largely on the lack of recorded deeds evidencing WMATA's property rights, as reflected in the title report commissioned by FiberLight. (FiberLight Mot. at 8, 24; Title Report, Ex. 6 to FiberLight Mot., ECF No. 65-4 (under seal).) However, WMATA's primary claim to a property interest in the WMATA System stems from a statute—the WMATA Compact—not from deeds. (*See* WMATA Reply at 13.) The WMATA Compact grants sufficient property rights to WMATA to enter into the License Agreement, even if WMATA is unable to produce recorded deeds for all segments of the WMATA System. *See, e.g.*, *Nat'l Wildlife Fed'n v. ICC*, 850 F.2d 694, 703 (D.C. Cir. 1988) (describing statutory grants of property interests to railroads).[8]

Furthermore, given WMATA's property interest in the WMATA System, FiberLight cannot place its cables in the System by claiming it to be part of the public right-of-way. Where WMATA tunnels are beneath a public road, the tunnels are not part of the public right-of-way. *See* D.C. Code § 10-1141.01(2), (3) (recognizing that property "in the public rights of way" can be considered "private"; in such instances, the "public rights of way" would be "adjacent to [the]

---

FIBERLIGHT any easement or any other ownership or property rights of any nature whatsoever in the WMATA System.").) Thus, any representation regarding WMATA's ability to enter into a lease agreement would not be material to WMATA's authority to enter into the present License Agreement.

[8] FiberLight's argument that a deed is required in order for WMATA to have any interest in the WMATA System is incorrect. FiberLight cites D.C. Code § 42-601 for the proposition that "in order to convey property, an instrument must say 'deed[.]'" (FiberLight Reply at 5 n.6.) However, this is a mischaracterization of the statute, which merely provides forms that are "sufficient" to constitute a deed, mortgage or lease. *See* D.C. Code § 42-601. FiberLight also mischaracterizes *Schooler v. Schooler*, 173 F.2d 299, 302 (D.C. Cir. 1948), arguing that it stands for the proposition that "ownership must be accompanied by the delivery of a deed." (FiberLight Reply at 7.) Instead, *Schooler* holds that where a deed is executed, it does not "take effect without delivery to a person in whose favor it is executed." *Schooler*, 173 F.2d at 302. *Schooler* is inapposite where a party's property rights derive from a statutory grant. *See, e.g.*, *Nat'l Wildlife Fed'n*, 850 F.2d at 703.

private structure," but would not include it). Therefore, FiberLight does not have an independent right to utilize the WMATA System for installation of its cables under D.C. law. *See* D.C. Code § 34-2004(a) (providing that "telecommunications provider[s] in the District shall have the right to utilize the public right-of-ways"; the provision does not provide a right to utilize property *adjacent to* public rights-of-ways).

FiberLight correctly notes that WMATA's authority to enter into the License Agreement could be "constrained by the terms of the instruments or statutes that provide them their authority." (FiberLight Reply at 11 n.13); *see also Nat'l Wildlife Fed'n*, 850 F.2d at 703. However, the scope of WMATA's authority, as explicitly articulated in the Compact, includes the ability to enter into the License Agreement. Article 12(d) provides that WMATA may:

> Construct, acquire, own, operate, maintain, control, sell and convey real and personal property and any interest therein by contract, purchase, condemnation, lease, license, mortgage or otherwise *but all of said property* shall be located in the Zone and *shall be necessary or useful in rendering transit service or in activities incidental thereto*;

WMATA Compact, Art. 12(d) (emphasis added). It cannot be disputed that the property implicated in the Agreement, the WMATA System, is necessary or useful in rendering transit service. FiberLight argues that FiberLight's *license* is not necessary for transit service (FiberLight Reply at 13), but any such argument is irrelevant given Article 12(d) does not specify that all conveyances or contracts must be necessary or useful in rendering transit service. The License Agreement is thus consistent with WMATA's authority as articulated in Article 12(d).

Article 74 of the Compact similarly does not constrain WMATA's authority to enter into the License Agreement. Article 74 authorizes WMATA to "locate, construct and maintain any of its transit and related facilities in, upon, over, under or across any streets, highways, freeways,

13

bridges and any other vehicular facilities, subject to the applicable laws governing such use of such facilities by public agencies." WMATA Compact, Art. 74. FiberLight argues that the "authority to construct transit and transit-related facilities under public 'vehicular facilities' does not imply the right to lease that public space to third parties." (FiberLight Mot. at 23.) The language of Article 74 neither restricts nor permits WMATA to enter into license agreements – which authority WMATA instead derives from Article 12. As explained *supra*, Article 12 authorizes the present Agreement. *See* WMATA Compact, Arts. 12(d), 12(f). The Court thus rejects FiberLight's argument that WMATA breached Article 14.1, since WMATA has the right under the Compact to grant a license to FiberLight and did not misrepresent its authority.

### 2. Article 21.1

FiberLight also alleges that WMATA breached Article 21.1 of the License Agreement, which provides in relevant part:

> WMATA and FIBERLIGHT agree that *if any representation* made in this License Agreement *is untrue in any material respect* when made and the non-defaulting party elects not to terminate this License Agreement, *the parties shall negotiate in good faith an equitable adjustment* to the payment terms with the intention of reasonably compensating the other party for any damages it may have sustained as a result of such representation being untrue when made.

(Agreement, Art. 21.1 (emphasis added).) Any alleged breach of this provision based on any alleged misrepresentation contained in Article 14.1 can be readily rejected, as explained *supra*. Thus, FiberLight's claim for an alleged breach of Article 21.1 depends upon its assertion that the License Agreement contained some other misrepresentation.

FiberLight argues that by making mention of a "WMATA right-of-way" in Articles 3.1, 3.4, 5.7, and 13.1 of the Agreement, WMATA was misrepresenting that it owned a right-of-way that it was licensing to FiberLight. (FiberLight Mot. at 15–17.) This argument is unfounded.

The Agreement makes clear that the only representations are those expressly made (*see* License Agreement, Art. 28.7), and the articles cited by FiberLight make mere mention of a "right-of-way" without any express representation regarding WMATA's ownership rights.  (*See id*, Arts. 3.1, 3.4, 5.7, 13.1.)  Furthermore, FiberLight's argument that WMATA represented in the Agreement that it was licensing FiberLight a right-of-way is easily discarded.  Article 3.1 of the Agreement makes clear what FiberLight was receiving: "[A] non-exclusive license ("License") to construct, install, operate, maintain, upgrade and replace telecommunications facilities (the "FIBERLIGHT System"), in, over, under, upon, across, and through the WMATA System, the Track Bed and the Terminus Stations."

Because FiberLight cannot legitimately point to a material misrepresentation by WMATA, Article 21.1's negotiation requirement was not triggered.  Thus, WMATA did not breach Article 21.1.

### 3. Article 27.4

FiberLight also alleges that WMATA breached Article 27.4 of the Agreement, which reads:

> In the event of any such claim or dispute, the parties shall negotiate in good faith to resolve the claim or dispute or, upon the failure to resolve such claim or dispute through good faith negotiations, the parties *may* attempt to resolve such claim or dispute through alternative dispute resolution (ADR) techniques. If the parties agree to use a non-binding ADR technique, nothing shall prohibit either party from terminating its participation at any stage, or if ADR does not produce results satisfactory to the parties, and from proceeding in accordance with Section 27.5. The cost of the selected ADR technique shall be equally shared by the parties.

(Agreement, Art. 27.4 (emphasis added).)  FiberLight alleges that WMATA breached this provision by failing to negotiate in good faith to resolve the parties' dispute.  In particular, FiberLight alleges that WMATA "failed to negotiate in good faith an equitable adjustment to the

payment terms of the License Agreement."  (Am. Compl. ¶ 83.)  As previously discussed,

because FiberLight's argument is based on the false premise that WMATA made a material

misrepresentation, it necessarily follows that FiberLight has no valid grounds upon which to

demand an adjustment to the payment terms of the contract.  WMATA's failure to agree to

amend the contract, in the face of no changed circumstances from when it was executed in 2006,

did not violate Article 27.4's good faith provision.  *See Ulliman Schutte Const., LLC v. Emerson*

*Process Mgmt. Power & Water Sols.*, No. 02-cv-1987, 2006 WL 1102838, at *20 (D.D.C. Mar.

31, 2006) (explaining that insistence on a contract's payment terms does not violate a duty to

negotiate in good faith).  Furthermore, any allegation that WMATA breached Article 27.4 by

failing to pursue alternative dispute resolution (ADR) is groundless, as the Agreement does not

require ADR; rather, Article 27.4 says that the parties "may" (not "shall" or "must") pursue

ADR.  Thus, the Court rejects FiberLight's contention that WMATA breached Article 27.4 of

the Agreement.

### B.  COUNT II: DECLARATORY JUDGMENT

FiberLight seeks a declaratory judgment that:

> (1) WMATA is in breach of the License Agreement and FiberLight
> is not; (2) WMATA cannot charge FiberLight an annual license fee
> under the License Agreement for placing the FiberLight System in
> the public rights-of-way; (3) WMATA must continue to provide
> FiberLight access to the FiberLight System as required pursuant to,
> *inter alia*, Article 11 of the License Agreement; (4) FiberLight has
> independent authority to place, operate and expand its network in
> the public rights-of-way; (5) WMATA's purported termination of
> the License Agreement was invalid; and, (6) WMATA has not
> taken and cannot take ownership and possession of the FiberLight
> System, interrupt live traffic on the FiberLight Network, or remove
> it from the WMATA System.

(Am. Compl. ¶ 92.)  This request for declaratory judgment must be rejected.  As explained

*supra*, 1) WMATA did not breach the License Agreement, and 2) WMATA can charge

FiberLight an annual fee for placing its cables in the WMATA System, which is not part of the public right-of-way. The third requested declaration is baseless, as FiberLight has not articulated why Article 11 of the Agreement, which governs "Expenses," would possibly require WMATA to provide FiberLight access to the FiberLight System. (*See* Agreement, Art. 11 (describing the allocation of expenses associated with the installation and maintenance of the FiberLight System).) The fourth request, regarding FiberLight's authority to operate its network in public rights-of-way, is irrelevant to the present controversy, as the WMATA System is not part of the public right-of-way. The Court thus declines to issue an advisory opinion on the issue. *See, e.g.*, *Gardner v. Gardner*, 233 F.2d 23, 25 (D.C. Cir. 1956) (finding a court cannot issue declaratory relief where "there is no 'actual controversy'"). The Court declines to issue the fifth requested declaration, as WMATA's termination of the Agreement was authorized by Article 21.1 since FiberLight was in default, pursuant to Article 20.1(a), for failure to make payments.[9] Lastly, the Court declines to issue the sixth requested declaration, as Article 2.4 of the Agreement permits WMATA, in its discretion, to take ownership of or remove the FiberLight System where the Agreement is terminated "in consequence of FIBERLIGHT's default." Thus, the Court grants summary judgment to WMATA on Count II.

---

[9] In particular, Article 20.1(a) indicates that an "event of default" includes "the failure of FIBERLIGHT to make any payment within fifteen (15) calendar days after FIBERLIGHT's receipt of notice from WMATA of FIBERLIGHT's failure to make such payment when due." FiberLight does not dispute that it has refused to pay WMATA's invoices since 2014. (*See* WMATA Facts ¶ 15; FiberLight's Counterstatement of Materials Facts at 4–7, ECF No. 62-3 (indicating the facts that it disputes but not listing paragraph 15).) FiberLight was sent a notice of failure to make payment on August 24, 2016. (Ex. 10 to WMATA Mot., ECF No. 54-12.) WMATA then terminated the Agreement in a November 2, 2016 letter, as FiberLight had failed to make payment within 15 days. (*See* Ex. 13 to WMATA Mot., ECF No. 54-15.)

## C. COUNT III: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

FiberLight also brings a claim for breach of the covenant of good faith and fair dealing. "Under District of Columbia law, every contract contains within it an implied covenant of both parties to act in good faith." *Window Specialists, Inc. v. Forney Enterprises, Inc.*, 106 F. Supp. 3d 64, 89 (D.D.C. 2015) (quoting *Choharis v. State Farm Fire & Cas. Co.,* 961 A.3d 1080, 1087 (D.C. 2008)). "A party can be liable for breach of the duty if it acts in bad faith and 'evades the spirit of the contract, willfully renders imperfect performance, [ ] interferes with performance by the other party[, or takes] arbitrary and capricious action.'" *Spence v. Countrywide HomeLoans*, No. 11-cv-1740, 2013 WL 12312807, at *7 (D.D.C. Mar. 8, 2013) (quoting *Allworth v. Howard Univ.*, 890 A.2d 194, 201–02 (D.C. 2006)). The implied covenant requires that "neither party . . . do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Window Specialists*, 106 F. Supp. 3d at 89 (quoting *Allworth,* 890 A.2d at 201). "To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege either bad faith or conduct that is arbitrary and capricious." *Wright v. Howard Univ.*, 60 A.3d 749, 754 (D.C. 2013).

FiberLight's claim is based on four alleged actions by WMATA: 1) committing to provide a detailed explanation of its legal authority on September 14, 2016, but failing to do so; 2) failing to pursue alternative dispute resolution as described in Article 27 of the Agreement; 3) WMATA's request for FiberLight to provide a plan to remove its fiber and subsequent notice that it was claiming ownership; and 4) refusing to negotiate an alternative rate for the license. (Am. Compl. ¶ 97.) Since none of these allegations can support a breach of implied covenant claim, Count III must be rejected.

Firstly, WMATA provided a description of its legal authority for entering the License Agreement on January 22, 2015, which points FiberLight to the same WMATA Compact relied on by this Court. (*See* Jan. 22, 2015 Letter, Ex. 12 to WMATA Mot., ECF No. 54-14.) FiberLight has failed to provide any basis for concluding that a failure by WMATA to repeat its argument that it derived its authority from the Compact after the September 14, 2016 meeting could constitute bad faith. FiberLight argues that it was bad faith for WMATA to fail to produce title reports or deeds (FiberLight Mot. at 28), but such an argument is nonsensical when WMATA has repeatedly said that its authority to own and operate the WMATA System is based in statute—the WMATA Compact. (*See, e.g.*, Ex. 12 to WMATA Mot.)

Secondly, as explained *supra*, Article 27 permits the parties to pursue alternative dispute resolution, but it does not require it.

FiberLight's third argument that WMATA behaved in contravention of the implied duty of good faith also fails. This argument is, in essence, nothing more than an argument that WMATA breached Article 2.4 of the Agreement,[10] which provides:

> Upon . . . termination of this License Agreement in consequence of FIBERLIGHT's default under Article 20 hereof, and unless otherwise agreed by the parties, the FIBERLIGHT System shall, at the sole and unfettered discretion of WMATA, either (a) become the property of WMATA or (b) at the written election of WMATA, be removed within six (6) months.

FiberLight argues that "Article 2.4 expressly provides that, upon termination of the Agreement by WMATA, FiberLight has six (6) months to remove its fiber." (FiberLight Mot. at 29.)

---

[10] The fact that FiberLight's assertion is nothing but a mere allegation of contract breach, without more, could serve as another ground for rejecting FiberLight's claim. A plaintiff must show more than negligent performance; it must show "bad faith or conduct that is arbitrary and capricious." *Wright*, 60 A.3d at 754. FiberLight has not articulated why WMATA's actions would constitute bad faith or arbitrary and capricious conduct even if, *arguendo*, they were in breach of Article 2.4.

According to FiberLight, WMATA's October 14, 2016 letter "gave FiberLight just fifteen (15) days before WMATA would elect ownership of FiberLight's fiber" and then, without giving the six-month notice that FiberLight asserts the Agreement requires, claimed ownership of the FiberLight System in its December 16, 2016 letter.  (*Id.*).

FiberLight's argument can be easily rejected.  Article 2.4 is clear that it is within WMATA's "sole and unfettered discretion" to *either* take ownership of the FiberLight System *or* require the removal of the FiberLight cables.  WMATA's December 16, 2016 letter indicated it was choosing the latter, which is explicitly authorized by the Agreement.  Furthermore, the plain language of the Article indicates that the six-month provision only applies to the removal of the FiberLight System, *not* to WMATA's election of ownership.  The language of Article 2.4 indicates that WMATA could take ownership of the FiberLight System upon termination of the Agreement without any notice period.  Thus, the Court rejects FiberLight's assertion that WMATA violated its duty when it wrote a letter indicating it was taking action explicitly permitted by the Agreement.  *See, e.g.*, *Sibley v. St. Albans Sch.*, 134 A.3d 789, 806 (D.C. 2016) ("The implied duty of good faith . . . does not require a party to waive or rewrite the terms of the contract.").[11]

---

[11] There appears to be some factual doubt as to whether WMATA has indeed asserted ownership over the fiber optic cable.  While WMATA's December 16, 2016 letter indicates that WMATA intended to claim ownership over the fiber (Ex. 6 to Am. Compl., ECF No. 13-6), WMATA's Reply states that "to this day, FiberLight owns and continues to operate its fiber in the WMATA System, notwithstanding having failed to pay the required fees for years."  (WMATA Reply at 23 n.23.)  This dispute is not material to the Court's conclusion.  If WMATA claims ownership over the fiber, the Court finds that this is authorized by the Agreement.  If WMATA has not elected to take ownership, this only serves to further undermine FiberLight's argument that WMATA took action that breached its covenant of good faith.

The fourth alleged basis for a breach of the implied covenant—failure to negotiate an alternative rate for the license—fails for the same reason. The implied duty did not require WMATA to renegotiate contract terms to which the parties had already agreed. *Id.*

For these reasons, the Court grants summary judgment to WMATA on all three of FiberLight's claims.

## III.   THE STATUTE OF LIMITATIONS

As an alternative ground for summary judgment, WMATA raises a statute of limitations defense. For the reasons outlined below, the Court agrees that the statute of limitations bars FiberLight's claim that WMATA breached Article 14.1 of the License Agreement.

The statute of limitations for a breach of contract claim in the District of Columbia is three years. D.C. Code § 12-301(7). The parties entered into the License Agreement on October 23, 2006. (Am. Compl. ¶ 21.) The present action was initiated more than 10 years later, on November 11, 2016. (*Id.* ¶ 70.) Thus, WMATA argues that the statute of limitations bars FiberLight's claim that in 2006 WMATA made a misrepresentation in Article 14.1. (WMATA Mot. at 13.)[12]

---

[12] The Court limits its consideration of this affirmative defense to FiberLight's claims that are based on conduct that occurred more than three years prior to the filing of this suit in 2016—that is, the alleged breach of Article 14.1, which was a representation made at the time the contract was agreed upon in 2006. There is no viable argument that the statute of limitations bars Count III or the other alleged breaches in Count I, which are based on conduct within three years of filing. (*See* Am. Compl. ¶¶ 63–69, 83, 97.) A cause of action does not accrue until all of its elements are present, which for these other claims would not be until WMATA committed the alleged breaching conduct—namely failing in 2016 to, *inter alia,* pursue good faith negotiations or abide by Article 27.4's terms regarding ADR. *See News World Comm'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005). The statute of limitations' bar on FiberLight's claims would apply to Count II's declaratory judgment claim to the same extent as Count I's breach of contract, and thus the statute of limitations would bar FiberLight from receiving a declaratory judgment that WMATA is in breach of Article 14.1 of the License Agreement, just as it bars the Article 14.1 breach of contract claim. *See Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*, 937 F. Supp. 2d 18, 38 (D.D.C. 2013).

FiberLight responds that the statute of limitations does not bar its claim because the License Agreement is an installment contract. (FiberLight Mot. at 30.)[13]  It is a recognized principle under D.C. law that "breaches of duty which occur in distinct intervals or installments, as opposed to being continuous, cause distinct and severable injuries . . . and the statutes of limitations . . . run separately for each."  *Union Labor Life Ins. Co. v. Sheet Metal Workers Nat'l Health Plan*, No. 90-cv-2728, 1991 WL 212232, at *5 (D.D.C. Sept. 30, 1991).  FiberLight argues that "[e]ach annual invoice from WMATA to FiberLight . . . was based on the renewed material misrepresentations that WMATA owns the rights-of-way and thus each invoice constitutes a new breach of the Agreement." (FiberLight Mot. at 32.)

The Court rejects FiberLight's assertion.  The installment contract doctrine is inapplicable where the allegations are "premised on 'a single event, discrete in time, from which all damages flow.'"  *Billups v. Lab. Corp. of Am.*, 233 F. Supp. 3d 20, 24 (D.D.C. 2017) (quoting *Keefe Co. v. Americable Intern., Inc*., 755 A.2d 469, 476 (D.C. 2000)).  WMATA's Article 14.1 representation was a single, distinct event in 2006.  Even if FiberLight alleges that this 2006 representation caused continuing damage—with FiberLight assuming the accuracy of the Article 14.1 representation when it made its annual payments—this could only "affect[] the damages calculation" for the Article 14.1 breach "at the conclusion of a successful action;" it "cannot restart the statutory clock."  *Billups*, 233 F. Supp. 3d at 24.

---

[13] At the motion to dismiss stage, FiberLight also argued that the statute of limitations did not bar its claims due to the discovery rule.  *See FiberLight, LLC v. Washington Metro. Area Transit Auth.*, No. 16-cv-2248, 2017 WL 2544131, at *8 (D.D.C. June 12, 2017).  FiberLight chose to drop that argument in its motion for summary judgment, instead proceeding on an installment theory only.  (*See* Sept. 6, 2017 Status Conference Tr. at 3:4–7, ECF No. 40.)  The parties' briefing continues to discuss when FiberLight learned of the facts underlying its claims in the context of debating WMATA's assertion that waiver and estoppel bar FiberLight's claims.  (*See* WMATA Mot. at 16–17; FiberLight Mot. at 35–38.)  The Court need not reach the issues of waiver and estoppel given its ruling on the merits of FiberLight's claims and on WMATA's statute of limitations defense.

Furthermore, FiberLight has provided *no* evidence to support the notion that WMATA's annual invoices contained new representations.  WMATA has refuted this assertion with the invoices themselves, which simply request payment and do not contain a representation of any kind.  (Ex. 1 to WMATA Reply, ECF No. 66-3.)

Therefore, while FiberLight's claims all fail on the merits, *see supra*, the applicable statute of limitations serves as an alternative ground for granting summary judgment to WMATA with respect to FiberLight's claim that WMATA breached Article 14.1.

## IV.     WMATA'S COUNTERCLAIMS

The parties have also cross-moved for summary judgment as to WMATA's two counterclaims: breach of contract (Count I) and unjust enrichment (Count II).  Because FiberLight breached Article 10 of the Agreement by failing to make its required payments, the Court grants summary judgment to WMATA on the first counterclaim.  Because an express contract governs the dispute, the Court grants summary judgment to FiberLight as to the second counterclaim for unjust enrichment.

### A.  COUNTERCLAIM COUNT I: BREACH OF CONTRACT

WMATA has brought a counterclaim against FiberLight, alleging that WMATA breached Article 10 of the Agreement by failing to make payments beginning in 2014.[14]

---

[14] Count I of WMATA's Amended Counterclaims also alleges that FiberLight breached Article 23.1 by "refus[ing] to provide WMATA with an orderly termination plan."  (Am. Countercls. ¶¶ 31–32.)  However, WMATA's motion for summary judgment does not advance this argument, instead proceeding only on an alleged violation of Article 10.  (*See* WMATA Mot. at 23–25.)  Article 23.1, on its face, does not require FiberLight to submit a termination plan to WMATA.  Instead, it requires "WMATA and FIBERLIGHT . . . to cooperate with each other in good faith to achieve an orderly termination."  (License Agreement, Art. 23.1.)  Given that WMATA's motion for summary judgment does not attempt to articulate how FiberLight breached Article 23.1, the Court will instead focus its attention on the alleged breach by FiberLight of Article 10 and assumes that WMATA is no longer pursuing a counterclaim based on an alleged breach of Article 23.1.

FiberLight does not dispute that it has refused to pay WMATA's invoices since 2014. (*See* WMATA Facts ¶ 15; FiberLight's Counterstatement of Materials Facts at 4–7, ECF No. 62-3 (listing the facts FiberLight disputes, which excludes paragraph 15); *see also* Am. Compl. ¶ 22.) Instead, FiberLight argues that 1) WMATA's breach excused its own performance, and 2) FiberLight should not be permitted to "profit from a contract based on a falsehood." (FiberLight Mot. at 13.) However, as explained *supra*, WMATA did not breach the License Agreement, and this contract is not based on a "falsehood" or any misrepresentation by WMATA. FiberLight had no valid defense for failing to make the payments required by the Agreement. Thus, this Court grants summary judgment to WMATA on its first counterclaim that alleges that FiberLight breached Article 10 of the License Agreement by failing to make its required license payments.

### B. COUNTERCLAIM COUNT II: UNJUST ENRICHMENT

WMATA also brings a counterclaim for unjust enrichment, arguing that FiberLight unjustly retained a benefit from WMATA by keeping its fiber in WMATA's underground tunnels without paying for this privilege. (Am. Countercls. ¶¶ 34–40; WMATA Mot. at 25.) WMATA's claim for unjust enrichment cannot succeed. In the District of Columbia, "there can be no claim for unjust enrichment when an express contract exists between the parties." *Albrecht v. Comm. on Employee Benefits of Fed. Reserve Employee Benefits Sys.*, 357 F.3d 62, 69 (D.C. Cir. 2004) (quoting *Schiff v. Am. Ass'n of Retired Persons,* 697 A.2d 1193, 1194 (D.C. 1997)); *see also Hughes v. Abell*, 867 F. Supp. 2d 76, 98 (D.D.C. 2012). Because FiberLight's behavior in failing to pay fees for its keeping of cables in the WMATA System is covered by an express contract (the License Agreement), WMATA cannot prevail on its unjust enrichment claim. *In re APA Assessment Fee Litig.*, 766 F.3d 39, 46 (D.C. Cir. 2014) ("[A] valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into

unjust enrichment.") (quoting Restatement (Third) of Restitution & Unjust Enrichment § 2(2) (2011)) (emphasis removed)).[15]

## CONCLUSION

For the reasons stated above, the Court grants summary judgment to WMATA on Counts I, II, and III of the Amended Complaint and Count I of WMATA's Amended Counterclaims. The Court grants summary judgment to FiberLight on Count II of WMATA's Amended Counterclaims. A separate Order accompanies this Memorandum Opinion.



ELLEN S. HUVELLE
United States District Judge

Date:   November 8, 2018

---

[15] FiberLight raised a different defense, arguing that WMATA's unjust enrichment counterclaim should be rejected because it is an "equitable remedy" and "WMATA comes to this Court with unclean hands." (FiberLight Mot. at 13.) The Court rejects WMATA's counterclaim for unjust enrichment for a different reason and thus need not address FiberLight's unclean hands defense.